IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**On Appeal From the United States Bankruptcy Court for the Southern District of Texas, Houston Division**

| | |
|---|---|
| IN RE: § § | |
| TFRC ENTERPRISES LLC, § § *Debtor* | BANKRUPTCY CASE NO. 23-60006 CIVIL ACTION NO. 4:23-cv-01394 |
| SETH KRETZER, RECEIVER, | |
| *Appellant* | |

### RECEIVER'S BENCH BRIEF SUBSEQUENT TO JUNE 1, 2023 HEARING AND MOTION TO 1) WITHDRAW REFERENCE UNDER AND 2) RECONSIDER APRIL 10, 2023 ORDER DENYING MOTION TO DISMISS

COMES NOW, Seth Kretzer, Receiver, and files this bench brief as directed at the June 1 hearing along with his motion to 1) withdraw the reference to the Bankruptcy Court and 2) reconsider April 10, 2023 order denying motion to dismiss.

At the hearing on Debtor's motion to dismiss on jurisdictional basis held June 1, 2023, this Honorable Court directed the parties to file any supplemental materials within seven (7) days [subsequently extended to the instant deadline of June 19, 2023; Doc. No. 10].

In support of his motion, Receiver would show the court as follows:

**I.   THIS COURT SHOULD WITHDRAW THE REFERENCE AS IT AVERRED AT THE JUNE 1 HEARING**

At the start of the June 1 hearing, this Court stated:

> I presume, if a mistake has been made, I can simply ***revoke the reference*** and deal with the question cleanly, if that's what we need to do. My concern is whether the right party filed the petition, and that's, sounds like to me, more of a state law question. I'm just not sure. So any advice you can give me on that would be -- be helpful.

Doc. No. 11, p. 4 (emphasis added).

A "district court may withdraw" a reference to the bankruptcy court "on its own motion or on timely motion of any party…". *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (quoting 28 USCS § 157(d)).  Among the questions courts ask when considering withdrawal under § 157(d) are:

> Would withdrawal further uniformity in bankruptcy administration?
> Would withdrawal foster economical use of resources?
> Would withdrawal expedite the bankruptcy process?

*Levine v. M&A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 203 (S.D. Tex. 2008) (Rosenthal, J.).

Receiver submits that the answer to each of these polemical questions is 'yes'.  Receiver contends that the Bankruptcy Court erred as a matter of law in determining that Richard J. Whitmore, II, as the sole member of TFRC Enterprises LLC ("TFRC"), had the authority to file a voluntary petition for voluntary relief under Section 301 of the Bankruptcy Code when the state court receivership order [never appealed to Texas' First or Fourteenth Court of Appeals] divested Mr. Whitmore of any authority to file bankruptcy on behalf of TFRC Enterprises LLC.

In other words, if Receiver's position prevails, there would not be any bankruptcy administration and/or need for the resources of that forum.  And the bankruptcy process would necessarily be expedited because withdrawal of the reference would allow this Court to resolve the matter directly without further litigation about whether or not the April 10, 2023 order [which the court itself said on the record was "final"] is in fact a 'final order' or an 'interlocutory order' under 28 USCS § 158(a).

## II. Procedural History

### A. Factual Background

#### 1. Underlying Judgment On Which Mr. Whitmore Has Never Paid A Penny

In September 2014, judgment creditor Frank Shaw obtained a money judgment against Mr. Whitmore in a state court action filed in the 11th Judicial District Court, Harris County, Texas. The total face value of the judgment is $240,406.49, and it continues to accrue post-judgment interest at annual rate of 18 percent, compounding annually. *Shaw v. Whitmore*, No. 2014-01425A (11th Dist. Ct., Harris Cty. Tex.). The balance of the judgment was $960,561.82 as of January 1, 2023. Mr. Whitmore has never paid any amounts toward the judgment.

### 2. Post-Judgment Litigation Holds Mr. Whitmore In Contempt

On April 4, 2022, in post-judgment litigation, the trial court entered a charging order against Mr. Whitmore's membership interest in TFRC, thereby creating a lien on any distributions owed or payable to Mr. Whitmore. (Ex. 4, Charging Order).

On October 25, 2022, the state court ordered Mr. Whitmore to appear and show cause why he should not be held in contempt for violating a prior post-judgment discovery order. (Ex. 5, Show Cause Order).

On December 1, 2022, judgment creditor Frank Shaw filed a post-judgment petition asserting that Mr. Whitmore, TFRC, and two other companies controlled by Mr. Whitmore engaged in fraudulent transfers and violated the charging order against TFRC in order to avoid payment of the judgment against Mr. Whitmore. (Ex. 6, Post-Judgment Petition).

During show-cause proceedings in December 2022, the trial court entered a post-judgment injunction against Mr. Whitmore that enjoined him from, among other things, transferring funds of TFRC to any third parties, except for transactions in the ordinary course of business. (Ex. 7, Temporary Injunction at pp. 3–4). He was also enjoined from depositing or receiving the TFRC's funds into his personal bank accounts. (Id. at p. 4). In support of the injunction, the court found

there was credible evidence Mr. Whitmore violated the charging order against TFRC when he transferred funds from its bank accounts to his personal bank accounts. (Id. at p. 2, ¶¶ 5–6).

On December 13, 2022, the 11th Judicial District of Harris County appointed Seth Kretzer as Receiver over judgment debtor Richard J. Whitmore, II, including any non-exempt property or businesses that he owns, manages, or controls.

### 3. Paragraph 18 Of Turnover Order Vests Authority to File Bankruptcy Exclusively in Receiver

The most salient section of the Turnover Order is its Paragraph 18:

> 18. During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition under the United States Bankruptcy Code without prior permission from this Court, or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Debtor.

It is significant that at no point did Mr. Whitmore appeal this interlocutory order to the First or Fourteenth Courts of Appeals, and it has long since become final.

More specifically, Section 51.014 of the Texas Civil Practice and Remedies Code expressly authorizes an appeal from certain "interlocutory orders" of the trial court, including orders appointing a receiver. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) (West 2011). Rule 26.1(b) of the Texas Rules of Appellate Procedure provides that an interlocutory appeal "must be filed within 20 days after the judgment or order is signed." TEX. R. APP. P. 26.1(b).

In other words, Mr. Whitmore ignored the turnover order just as he had the final judgment and all of the other post-judgment orders.

### 4. Judge Hawkins Authorized Receiver To Sell TFRC's Passel of Rental Properties

The appointing state judge, Hon. Kristin Hawkins of the 11th Civil Court of Harris County, signed an order on January 24, 2023 which authorized Receiver Kretzer to engage a realtor to sell a passel of rental properties in Sealy, Texas. Judgment Debtor Whitmore was represented by counsel at the January 23 hearing before Judge Hawkins; he made no objection to the hearing or after the written order was entered.

Pursuant to that order, Receiver immediately executed listing agreements with Martha Turner Sotheby's International Realty to list, market, and sell the properties for the combined price of $2,599,000.00.

### B. Proceedings in Bankruptcy Court

On January 27, 2023, Mr. Whitmore placed TFRC in Chapter 11. Nowhere did Mr. Whitmore mention Turnover Order Paragraph 18's prohibition on a bankruptcy filing. Nor did Mr. Whitmore mention that he had been defeased of his shares in TFRC long before he made the filing.

On January 30, 2023, Receiver filed a motion to dismiss on the grounds that the bankruptcy filing was unauthorized. TFRC filed its response on February 16, 2023. The nub of this response was that Texas law limits a judgment creditor such as Mr. Shaw to a charging order against limited liability member interests. On February 28, 2023, Receiver filed his reply brief.

Thereafter, Mr. Whitmore moved to convert from a Chapter 11 to Chapter 7 bankruptcy.

Judge Jones held an oral hearing on April 10, 2023 at the conclusion of which he denied the motion to dismiss. A written order followed the same day. The orders also granted the motion to convert from Chapter 11 to 7.

Receiver promptly filed his notice of appeal and designated the record on appeal.

### III.   SUMMARY OF THE ARGUMENT

Page | 5

The Turnover Order prohibited Mr. Whitmore from filing for bankruptcy without leave of the state district court viz his appointed receiver. Indeed, the Receiver had acceded to control of Mr. Whitmore's 100% membership interest in TFRC. This state court order was never appealed to the Texas First or Fourteenth Courts of Appeals; the state district judge was never asked to change the order, modify it, or grant permission for a bankruptcy filing.

As such, Richard Whitmore, who caused the voluntary petitions to be filed as the "authorized agent" of TFRC, was without authority to file such petitions.

The Bankruptcy Case should have been dismissed as an unauthorized filing. After this Court withdraws the reference, the April 10, 2023 order should be rescinded.

## IV.   THE UN-AUTHORIZED FILING

On January 27, 2022, Mr. Richard Fuqua, counsel for TFRC, filed the Chapter 11 bankruptcy petition on behalf of TFRC. Mr. Fuqua did so with actual knowledge that Mr. Whitmore was subject to a receivership but did not request or obtain prior approval from the Receiver to file the present Chapter 11. (Ex. 9). Instead, in filing the petition, Mr. Fuqua apparently relied on Mr. Whitmore's sworn statement that—by a resolution that he "adopted" as the sole managing member of the company on the same day as the filing—he "was authorized and directed to execute and deliver all documents necessary to perfect the filing of a Chapter 11 voluntary bankruptcy case on behalf of the company. . . ." (Doc. 1 at p. 6). Elsewhere under penalty of perjury, Mr. Whitmore attested that he had been authorized to file the Chapter 11 petition and schedules on behalf of the company. (Doc. 1 at p. 30). But at no point in time did Mr. Whitmore request or obtain approval from the Receiver to initiate Chapter 11 bankruptcy on behalf of TFRC.

Similarly, Mr. Fuqua's compensation disclosures provide that his law firm received $56,738.00 of funds/property from TFRC before filing. (Doc. 1 at p. 27). Again, Mr. Whitmore's

declaration provides that, by his own same-day resolution, he was authorized and directed to employ Mr. Fuqua. (Doc. 1 at p. 6). This is despite the fact that two separate court orders [entered in the calendar year before] barred Mr. Whitmore from transferring the very property he used to compensate Mr. Fuqua.

In sum, Mr. Whitmore and his attorneys initiated the Chapter 11 filing only four days after the state court approved the Receiver's application to list and sell TFRC's real estate.

## V. STATE LAW DETERMINES CORPORATE AUTHORITY TO MAKE BANKRUPTCY FILING

"The Bankruptcy Code does not prescribe who has the authority to file a petition on behalf of a Debtor." *In re StatePark Building Group, Ltd.*, 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004). Instead, the authority to file a bankruptcy petition on behalf of a debtor is determined by state law. *Price v. Gurney*, 324 U.S. 100, 106 (1945).

"As a threshold issue, the Court must determine whether the Managing Member possessed the requisite authority to file the petition in bankruptcy on behalf of the Debtor. The Supreme Court has opined that with respect to corporations, the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition." *In re E. End Dev.*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (quoting *Price v. Gurney*). "The authority to file a bankruptcy petition on behalf of a corporation must derive from state law." *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) (citing *Price v. Gurney*).

"In general, state law determines who has the authority to file a bankruptcy petition on behalf of another." *Wieczorek v. Woldt (In re Kjellsen)*, 53 F.3d 944, 956 (8th Cir. 1995). "[A]s Wieczorek had exclusive control over Kjellsen's property, Woldt and Kjellsen necessarily lacked authority to file the bankruptcy petition."). *Id*.

TFRC is a single member limited liability company organized under the laws of the state

of Texas. Richard Whitmore is a Texas citizen whose 100% membership interest was seized by a Turnover Order [never appealed] subsequent to a Texas judgment [a decade old] on which Mr. Whitmore never paid a penny. Hence, Receiver had the unilateral authority to authorize a bankruptcy filing under Texas law.

VI. **BANKRUPTCY PROCEEDINGS OF LIMITED LIABILITY COMPANIES ARE NOT VALIDLY FILED WITHOUT EFFECTIVE CONSENT OF THE MEMBERS**

Courts across the country have long recognized that limited liability companies (LLCs) can only be placed into bankruptcy by someone with legal effective authority to do so. The most prominent example from a federal district court in Texas appears to be *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex. 2006) ("the case must be dismissed because HSM does not have the consent of all members of the LLC to file the bankruptcy petition"). A more recent example comes from the Northern District of Mississippi: "Without a valid vote of the Debtor's membership, which no one alleges actually occurred, none of the members, including Dr. Windham, had the authority to sign or file the petition on behalf of the Debtor*." In re Mid-South Bus. Assocs., LLC*, 555 B.R. 565, 577 (Bankr. N.D. Miss. 2016).

Courts outside the Fifth Circuit agree. For example, the court in *In re Real Homes*, LLC, 352 B.R. 221 (Bankr. D. Idaho 2005), found that the limited liability company on whose behalf a Chapter 11 petition was filed failed to respond to a *prima facie* showing that the individual signing petition was without authority to do so, and failed to present preponderating evidence that this individual was entitled to execute the petition either as member or as authorized agent.

When a limited liability company member brought a motion to dismiss the limited liability company's Chapter 11 petition, the court in *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 42 Bankr. Ct. Dec. (CRR) 77 (Bankr. D. Or. 2003), found that a manager resolution was not effective to authorize the filing of the Chapter 11 petition on behalf of the limited liability company under

Page | 8

either Oregon law or the company's operating agreement, according to the Bankruptcy Code, 11 U.S.C.A. § 301, since conversion of the limited liability company into a debtor in possession was, *inter alia*, made without the consent of a majority of the members.

Receiver contends that the logic of these cases applies even more strongly to the facts in this case *sub judice*. One single judgment debtor, Richard Whitmore, previously owned 100% of TFRC; Whitmore had been entirely defeased of the entire membership before he signed the bankruptcy filing. Seth Kretzer, Receiver, owned 100% of the membership interest in TFRC, but the receiver did not authorize the bankruptcy filing. For these reasons, the federal court never acquired jurisdiction.

### VI. TEXAS LAW ALLOWS A STATE DISTRICT COURT TO VEST THE BANKRUPTCY FILING AUTHORITY WITH A RECEIVER

"Not only can a state court vest authority to file a bankruptcy petition for an entity debtor in a receiver, but it can also vest that authority *entirely* in the receiver, at the exclusion of the pre-receivership management of the entity debtor." *WC 1st and Trinity GP, LLC v. Milligan*, 2021 WL 6750934 at *2 (W.D. Tex. 2021) (original emphasis) (citing *Chitex Comm. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994).

In the case *sub judice*, the Order Appointing Receiver, signed December 13, 2022, vested all powers to manage Mr. Whitmore's property and businesses (e.g., TFRC Enterprises LLC) in the Receiver. (Ex. 1 at ¶¶ 4, 11). The Order specifically enjoins all persons with actual notice of the Order "from filing a petition under the United States Bankruptcy Code without prior permission from the [state court], or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the [Mr. Whitmore]." (*Id*. at ¶ 18).

Mr. Whitmore thus lacked authority to file bankruptcy petitions on behalf of TFRC. *See In re StatePark Building Group, Ltd.*, 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004). ("Under Texas law, the appointment of a general receiver displaces and supersedes in its entirety the pre-receivership management of an entity."); *Chitex Comm. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994) (holding president of entity debtor subject to receivership had no authority to file bankruptcy petition on behalf of entity debtor because authority resided only in receiver).

### VII. WHITMORE NEVER APPEALED JUDGE HAWKINS' ORDERS; HE CANNOT TRANSMOGRIFY THIS COURT INTO TEXAS' FIRST OR FOURTEENTH COURT OF APPEALS IN ORDER TO LAUNCH A COLLATERAL ATTACK

#### A. Receivership Doctrine Under Texas Law

For more than a century under Texas law, the power of a receivership derives from the doctrine of *custodia legis*. Once a turnover order is signed, all of the judgment debtor's nonexempt property becomes property in *custodia legis*, or "in the custody of the law." *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex. 1976). The judgment debtor's property is considered to be in the constructive possession of the court. During the pendency of a receivership, the receiver has exclusive possession and custody of the judgment debtor's property to which the receivership relates. *First S. Props.*, 533 S.W.2d at 343; *Ellis v. Vernon Ice Co. & Water Co.*, 86 Tex. 109, S.W. 858 (1893). As far back as 1852, the U.S. Supreme Court has held that when a court appoints a receiver to hold property, "the sale under the judgment, pending the equity suit and while the court [through receiver] was in possession of the estate without the leave of court, was illegal and void." *Wiswall v. Sampson*, 55 U.S. 52, 67 (1852).

During the pendency of a receivership, the receiver has exclusive possession and custody of the judgment debtor's property to which the receivership relates. *First S. Props.*, 533 S.W.2d at 343; *Ellis v. Vernon Ice Co. & Water Co.*, 86 Tex. 109, S.W. 858 (1893). No one, not even a lien

holder with a deed of trust, can sell property held *in custodia legis* by a duly appointed receiver. *First S. Props*. at 533 S.W.2d at 341; *Huffmeyer v. Mann*, 49 S.W.3d 554, 560 (Tex. Civ. App. – Corpus Christi, 2001). Any unauthorized transfer of property in the custody of a receiver is not merely voidable, it is void. *First S. Props*., 533 S.W.2d at 341. Any conveyance of property in the custody of a receiver without approval by the court has no effect upon the receivership and the accomplishment of its purposes. *T.H. Neelv. W.L. Fuller*, 557 S.W2d 73, 76 (Tex. 1977). Therefore, any disposition of *custodia legis* assets after the turnover and receivership order was signed is void and can be called back by the receiver and enforced by contempt if necessary. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

In *Beaumont Bank*, the Supreme Court of Texas quoted the following passage from a legal article written by Judge David Hittner:

> The changes [in the turnover statute] are open-ended in that they allow a judgment creditor to get aid in collection from the Court in the form of an order which requires the debtor to bring to the Court all documents or property used to satisfy a judgment. The actual effect of the bill is to require the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment.

Hittner, *Texas Post—Judgment Turnover and Receivership Statutes*, 45 TEX. BAR J. 417, 418 (April 1982) (quoting House and Senate Committee reports, Tex. Rev. Civ. Stat. art. 3827a (now TEX. CIV. PRAC. & REM. CODE § 32.001)).

### B.     Mr. Whitmore's Membership Interests in TFRC Was Non-Exempt Personal Property Before The Receiver Seized It; Thereafter, It Was Held in *Custodia Legis*

Mr. Whitmore's membership interest in TRFC constituted a form of non-exempt intangible personal property. Under Texas law, a membership interest in a limited liability company comprises intangible personal property. TEX. BUS. ORGS. CODE § 101.106(a); 15 Tex. Jur. (3rd ed.) § 581 (2020). "The term 'property' is broadly defined." 59 Tex. Jur. (3rd ed.) § 581 Corporations (2015) (citing *Weaver v. Aquila Energy Marketing Corp.,* 196 B.R. 945 (S.D. Tex.

1996) (applying Texas law). The term "property" "means real and personal property." Tex. Gov't Code § 311.005(4) (2019). "The term extends to every species of valuable right and interest in real and personal property. In its strict legal sense, 'property' signifies that dominion or indefinite right of use, control, and disposition that one may lawfully exercise over particular things or objects, that is, the sum of all the rights and powers incident to ownership." 59 Tex. Jur. (3rd ed.) § 1 Property (2015) (citing *In re Croft*, 737 F.3d 372 (5th Cir. 2013) (applying Texas law).

At the time of signing of the Turnover Order, these shares were held in *custodia legis*. In other words, Mr. Whitmore did not own any of these shares when he signed the bankruptcy petition.

### C. The Texas' First Court of Appeals Has Recently Affirmed That A Turnover Order May Permit A Receiver To Seize Membership Interests in an LLC

Texas' First Court of Appeals recently addressed this precise issue in *Great Value Storage, LLC v. Princeton Capital Corp.*:

> In the appeal from the order appointing a receiver, Great Value and WCCG raised four issues.
>
> "Second, they argued that the trial court abused its discretion by ordering them to turn over to the receiver all interests they held in any limited liability company and limited partnership. Third, they assert that the trial court abused its discretion by authorizing the receiver to (a) seize the membership interest of any limited liability company in which they are members and (b) sell, manage, and operate the limited liability company as the receiver deems appropriate."
>
> "The second, third, and fourth issues in the appeal from the order appointing a receiver were not presented in the trial court, and thus these arguments do not comport with the complaints made in the trial court. *See Amerjin Co.*, 2020 Tex. App. LEXIS 2651, 2020 WL 1522823, at *11. ***We conclude that these issues are waived, and we overrule them***."

No. 01-21-00284-CV, 2023 Tex. App. LEXIS 2537, *43-44 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, no pet. h.) (emphasis added).

### D. Texas Courts of Appeals Have Upheld Turnover Orders When The Debtor Is The Only Member of the LLC

In *Heckert v. Heckert*, the court upheld a turnover order directing the ex-husband to turn over to the ex-wife assets he placed in a non-operating sole-member limited liability company and partnership of his single member LLC was the general partner and he individually was the limited partner as there would be no disruption to the operating business or detriment to other individuals. No. 02-16-00213-CV, 2017 Tex. App. LEXIS 10570, 2017 WL 5184840, at *7-9 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.). This seems to fit the situation of Receiver Kretzer viz. Whitmore's interest in TFRC to a tee: 1) there were no other members in TFRC and 2) the Chapter 7 Trustee hired the very same realtor [Sotheby's] to sell the Sealy rental homes immediately after his appointment by Judge Jones just as Receiver Kretzer had immediately after he was authorized by Judge Hawkins.

### E. Texas Courts of Appeals Reject The Trustee's Charging Order Sophistry; That Is The Likely Reason Whitmore Never Filed An Appeal On This Ground Or Any Other

At the June 1 hearing, Trustee argued as follows about *Pajooh v. Royal West Investments LLC, Series E*, 518 S.W.3d 557, 562-65 (Tex. App.—Houston [1st Dist.] 2017, no pet.):

> [T]hat opinion deals directly with this – this question, and it says that the charging lien statute is the exclusive remedy by which the interest in an entity owned by a judgment debtor can be liquidated.

Transcript, p. 18.

Texas law states that "the entry of a charging order is the exclusive remedy by which a ***judgment creditor*** of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest." Tex. Bus. Orgs. Code § 153.256(d); *see also id.* § 101.112(d) (similar for judgment debtor's interest in limited liability companies) (emphasis added).

Page | 13

The Chapter 7 Trustee's stated position at the June 1 hearing runs into huge problem because of a little tautology: a receiver is not a judgment creditor. As Judge Hittner explained way back in his 1982 article, that is the very reason that the Texas Legislature created receiverships; to aid judgment creditors with additional tools when post-judgment mechanisms had been unsuccessful.

If either the Chapter 7 trustee or Mr. Whitmore thought this argument had any chance of winning, they would have made some request to lodge an appellate challenge by now. The likely reason that neither has tried is that a review of Texas caselaw indicates that courts frequently authorize Receivers to exercise authority over a judgment debtor's interests in LLCs without requiring a separate charging order in advance:

*Antolik v. Antolik*, 625 S.W.3d 530, 540 n. 17 (Tex. App.—Texarkana, 2021) This precise issue was briefed in this case, with the appellate court noting that:

"Victor claims, under [TBOC § 101.112}, the Receiver's sole remedy (assuming the trust is disregarded) was to obtain a charging order against his membership interest in BP II. The Receiver maintains that Section 101.112 does not apply because the Receiver is not a judgment creditor. Instead, as a Receiver, he stands in the shoes of the judgment debtor, Victor, and was empowered by the Receivership Order to sell Victor's non-exempt membership interests." *Id*. The court noted that the Receivership Order "specifically referenced the ability to sell membership interests." *Id*. The appellate court didn't need to reach the issue, because it determined that the question had been mooted by the Receiver's sale of the interests, and denied the debtors' other appellate issues.

*Bennett v. Backer Broocks & Lange, LLP*, 2014 WL 3107661 at *2 (Tex. App.— Houston [1st Dist.] July 8, 2014, no pet.). The First Court of Appeals heard an appeal from a judgment debtor who complained that the trial court's order improperly appointed a receiver over a wholly-owned PLLC (professional limited liability company). The order specifically granted the receiver authority over the debtor's individual property, "including business entities…which have possession, custody, or control of any assets or funds in the name of or for the benefit of" the

judgment debtor or are operated by the judgment debtor. *Id.* The appellate court explicitly noted that:

> "The Business Organizations Code explains that a membership interest in a limited liability company is personal property" and thus is appropriately subject to a receivership order."

*The Roy F. & Joann Cole Mitte Foundation v. WC 1st and Trinity, LP*, et al, Cause No. D-1-GN-18-007636, in the 126th Judicial District of Travis County, Texas. The trial court appointed a receiver, Gregory Milligan, with the power to take custody of all assets, including "membership interests in any limited liability company" owned by the defendants. The Third Court of Appeals affirmed the Receiver appointment in full. *See* Case No. 03-19-00799-CV.

### F.   This Court Should Not Countenance A Collateral Attack on the Turnover Order

In *Great Value*, an appellate challenge to a turnover order that allowed a receiver to assume control over a debtor's interests in an LLC was rejected when the debtor had procedurally defaulted the issue in the trial court. Mr. Whitmore and the Chapter 7 Trustee would have this court go further and re-write Judge Hawkins' turnover order even though Whitmore never filed any appellate challenge at all.

A "collateral attack" is "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (orig. proceeding). In other words, "when a party initiates a separate lawsuit to attack a trial court's order that is otherwise appealable, the lawsuit constitutes an impermissible 'collateral attack' on the order." *1st &Trinity Super Majority, LLC v.*

Page | 15

*Milligan*, No. 08-20-00230-CV, 2022 WL 2759049, at *8 (Tex. App.—El Paso July 14, 2022, no pet.) (citing *Browning*, 165 S.W.3d at 345-46).

Texas law generally prohibits collateral attacks because they flout the policy of giving finality to judgments and attempt "to bypass the appellate process in challenging the integrity of a judgment." *Browning*, 165 S.W.3d at 345-46. Texas courts have routinely rejected collateral attacks on receivership orders. For example, in *Davis v. West*, 317 S.W.3d 301, 308-10 (Tex. App.— Houston [1st Dist.] 2009, no pet.), the court held that a judgment debtor's claim in a Brazoria County suit that a receiver's "powers exceed[ed] that allowed by the statute" constituted an impermissible "collateral attack on the turnover order" that appointed the receiver in a prior Harris County suit. Similarly, in *Sun Tec Computer, Inc. v. Recovar Group, LLC*, No. 05-14-00257-CV, 2015 WL 5099191, at *2-4 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.), the court held that a judgment debtor could not attack "actions taken by the receiver" pursuant to a turnover order or assert that the "turnover order" appointing the receiver was void in a separate lawsuit because doing so constituted a collateral attack on that order.

## Conclusion

Even if this Court were to conclude that the Turnover Order contained legal error, the solution is not to hear a bankruptcy case in the absence of federal jurisdiction.

> [T]he fact that the turnover order is contrary to a statute or contains errors only makes the judgment 'voidable' and does not give a party the right to circumvent ordinary appellate or other direct procedures to correct it.

*Davis v. West*, 317 S.W.3d 301, 310 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

This Court should not permit blatant end-run around the Texas state courts. This Court must dismiss the bankruptcy petition as unauthorized because there is no federal jurisdiction to do anything else.

Respectfully submitted,

/s/ Seth Kretzer, Receiver
LAW OFFICE OF SETH KRETZER
917 Franklin; Sixth Floor
Houston, TX 77002
DIRECT: 713/775-3050
FAX: 713/929-2019
seth@kretzerfirm.com

## CERTIFICATE OF SERVICE

I certify that all counsel of record were served via filing on the ECF System on this 19th day of June 2023.

/s/ Seth Kretzer

Seth Kretzer

## CERTIFICATE OF CONFERENCE

The Chapter 7 trustee is opposed to this motion.

/s/ Seth Kretzer

Seth Kretzer